The opinion of the, court was delivered by
Huston, J.
This was an ejectment brought by George Dixon, in his lifetime, for a part of á tract of land in Juniata township, Peny county. The facts before the court, and material in this case, were, that about 1769 one M'Coskry made a settlement near the land in question, and one Wallace, also, near him. That before the year 1776, a dispute having arisen between these men as to their respective boundaries, a line was agreed oh and marke.d by consent of both parties; and the lands north of this were to belong to-Wallace, and south of it to M'Coskry. The plaintiff claimed *56 under M‘Coskry’s right, which had passed through, several hands, before he became the owner. -MiCoskry, and every subsequent owner before Dixon, had recognised this line as the boundary of the tract. George Dixon took out a warrant for the land claimed by him, dated the 23d of March, 1810, for one hundred and fifty acres; on which a survey was made the 25th of November, 1811, of two hundred and seventeen- ácres one hundred and forty-six perches; which, with his consent, was bounded by the line agreed on as before-mentioned, with Wallace, and which survey did not include the land in question. . . .
. Before-this time, Peter Hickes, who had become the owner of Wallace’s claim, had taken out a warrant and surveyed in a' part of the land within Dixon’s claim, and within his survey of two hundred and seventeen acres one hundred and forty-six perches. Dixon entered a caveat against Hickes; and on a hearing before the Board of Property, a decisión was made on the 3d of December, 1811, in favour of Dixon, to the whole extent of his survey of two hundred and seventeen acres one hundred and forty-six perches; “ Provided, however, he shall release the former warrant for the one hundred and fifty acres to the commonwealth, and take a warrant of resurvey for the whole of his claim, which the secretary of the land office is directed to issue as soon as the said Dixon executes the said release, and pays the balance of the purchase money and fees of office.”
On the 17th of December, 1811, a warrant of resurvey, 'as it was called, issued; which recited the above decree of the Board of Property, “ directed to the secretary of the land office, to issue a warrant of resurvey for the above-mentioned quantity of two hundred and seventeen acres one hundred and forty-six perches to the said George Dixon, Sic. &c., that he had released,-&c., paid, &e. These are, therefore,, to authorize you to resurvey, at the place aforesaid, the above-mentioned quantity of land, &c. &c.” On this a survey was made on the 13th of December, 1813, including the lands in question; but it was a tissue of blunders or frauds; it contained more than two hundred and sixty acres, but it purported to contain only two hundred.and seventeen acres fifty-four perches. It would. Seem that‘Dixon did not know that it contained the land in question; for on the 14th of August, 1820, he presented a petition to the Board of Property, stating that the said survey left out part of the land claimed by the petitioner, &c. The board granted an order of resurvey, to correct errors exclude interferences according to prayer, provided it did not interfere with the right of the owners of adjoining lands. The survey made on this corresponded in corners and courses with the last, except an immaterial, variance: but by correcting the measure, made the quantity two hundred and sixty acres one hundred and twenty-three perches. I now return to the title of the defendant; it would seem he had made a survey on his old improvement which did not ex *57 tend to the consentable line between him and Dixon; part of it had. been cleared and fenced, but no actual residence on it; he had taken cut a warrant in 1776, and procured a survey including the land in question, and some more to which he had no colour of right; but, before. Dixon had made any claim to the land in question, and before his first petition to the Board of Property,- viz. in March, 1811, Hickes began to build a house on the land in question, which he finished during the summer and autumn, and into which he removed his family in the beginning of the winter, and where he or his tenants have resided, and still reside. The men who settle in our forests are not possessed of Aladdin’s lamp; they cannot com-* píete a dwelling in an hour; he, then, who first begins to improve and build on vaeant land, is protected by the law, as an actual settler, from the day he begins, as much and as fully as after he has completed and moved into his house, provided he is proceeding with reasonable and proper diligence to complete his residence.
How then stand the parties? Dixon and those under whom he claims, had, by an agreement, and by a marked line, excluded the land in question from their claim for near half a century; during which time, it had been considered the property of Hickes, or those under whom he claimed; by some means it had perhaps been so treated by them, as that it was dropped from their sight, arid was for a period, vacant land, subject, to be appropriated by the first-person who would settle on it. Hickes was¡that .first person; his actual claiming a part of it before, and his commencement of a house in March, 1811, duly followed up and completed, give him a right to it, at least, from March, 1811, which 'neither Dixon nor the Board of Property, could take from him. The Board of Property never attempted to deprive him of it: their order of the 17th of December, 1811, was rightly understood by the court below: it was an order to resurvey the two hundred and seventeen acres and one hundred and forty-six perches, included in Dixon’s first survey, and no other land. Although the land in question was included in the survey, made on that order in ISIS, it was included against law and right.
A man who had an improvement, might, if there was so much vacant land, include three hundred acres; but he might take less, If such improver agreed on a line with an adjoining settler or warrant holder, as was common, and no fraud, such line, commonly called consentable lines, limits and determines the right of the pai> ties; but if one party abandons his whole claim, or a part of it, the other may, after it is so abandoned, and while it is derelict, extend his claim, and include it. If he does not do so, but lies by until the other party, or some third person has acquired'a legal interest in it, he cannot extend his claim thereafter, and obtain it. The judge was right in stating, th.at the case was clear; with the de? fendant on the above facts.
But it is insisted that the judge was wrong in another parti *58 cular. During a certain period, the Board of Property of this state undertook, not only to do every thing in the proper manner, but to revise all, or much of what had been done, respecting titles to land, which, for a time, occasioned no little trouble and expense to a part of the land owners. By a regulation of the proprietary in 1767, and by an act of assembly of the 8th of April, 1715, section xv. it had been directed that no more than ten per cent., in addition to the quantity called for, should be surveyed and returned on any warrant. It frequently happened, that the surveyor, on calculating a survey, discovered that he had included the quantity called for, and more than ten acres to every hundred acres in addition. Such surveys were, however, often returned under the proprietary, and often under the state, the returns accepted, and lands patented, sold or passed by descent to heirs who divided them. ‘No injury was done, or could be done to the state; for the owner, when he came to patent, must pay for the overplus at the same rate which he had paid for the residue, and also interest thereon from the date of his warrant. It had been frequently decided, that such returns were not invalid, where there was no interference with the rights of third persons; but about the period above-mentioned, the Board of Property, or a majority of them, compelled a person who came to patent a tract so situated, to take out a new Warrant for the overplus, or what they called a warrant of resurvey, to include the whole quantity; which latter was granted on releasing the former warrant. This was done by that board in the present ease, between the parties, as before slated. The judge not having his attention called to it, the matter being immaterial in this cause, approves of such practice of the board, and this is alleged as error. It is not error in this cause. If a judge were to go into details and explanations on every point incidentally mentioned in every cause, it would only perplex a jury, and produce no good result. It is believed, the above practice of the land office has long since ceased: it did no good, occasioned much trouble and expense, and was erroneous as unsettling estates, and in considering that as essential which was only directory.
In every matter essential to the cause trying, the charge of the judge was strictly correct. The rights of the parties depended on principles long settled, and the justice of Avhich was obvious to every understanding. The-Board of Property did not intend to contravene those settled principles; and, if they had intended it, could not have done so with effect; neither a common order of resurvey, nor their uncommon ivarrant of resurvey, could alter the rights of the parties. The judge states those rights distinctly, and the law arising from the facts, correctly; and even if, which I am satisfied he did not, he had intended to give a deliberate sanction to thgt practice, it would in no way affect this cause.
Judgment affirmed.